```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
NORWEGIAN BULK TRANSPORT A/S,  :           ECF

              Plaintiff,       :        08 Civ. 5591 (LAP)

         -against-             :

PIONEER NAVIGATION LTD.,       :

              Defendant.       :
------------------------------x
```

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO VACATE ATTACHMENT OR ALTERNATIVELY
TO REDUCE THE ATTACHMENT

 

CARDILLO & CORBETT
Attorneys for Defendant
PIONEER NAVIGATION LTD.
29 Broadway
New York, New York 10006
(212) 344-0464

Of Counsel
James P. Rau

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT I

THE ATTACHMENT SHOULD BE VACATED AS IT WAS
IMPROPERLY OBTAINED AND IS AN ABUSE OF THE
MARITIME PROCESS . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT II

ALTERNATIVELY PURSUANT TO SUPPLEMENTAL
RULE E(6) THE COURT SHOULD REDUCE THE
AMOUNT OF THE ATTACHMENT TO REFLECT THE
TRUE COSTS OF ARBITRATION UNDER THE SCP 10 . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**PRELIMINARY STATEMENT**

Defendant PIONEER NAVIGATION LTD. ("Pioneer") submits this Memorandum of Law in support of its motion to vacate the attachment, or alternatively, reduce the amount of the maritime attachment obtained by plaintiff NORWEGIAN BULK TRANSPORT A/S ("Plaintiff" or "NBT"), pursuant to Rule E(4)(f) and Rule E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules").

This admiralty action was commenced by NBT to obtain an Ex-Parte Order of maritime attachment and garnishment for security of its claim for $2,379.38 against Pioneer which is to be resolved by arbitration in London. NBT obtained an Ex-Parte Order dated June 24, 2008 (the "Order") authorizing the attachment of the assets of Pioneer, in the amount of $77,379.38, which included "estimated" attorneys' fees and arbitration costs that supposedly would be awarded in the London arbitration. NBT has restrained the full amount of its claim.

For the reasons set forth in the accompanying Declaration of Carlo Sammarco, Esq. dated July 21, 2008 ("Sammarco Dec.") and the Declaration of James P. Rau dated July 23, 2008 ("Rau Dec."), and for the reasons explained herein, the Order should be vacated because NBT failed to disclose in its Complaint that the underlying arbitration agreement contained a small claims procedure limiting the amount of costs and fees that could be awarded. In fact, under the small claims arbitration

procedure agreed to by the parties for claims under $100,000, the maximum costs and fees that could be awarded by the sole arbitrator is under $10,000, rather than the $75,000 obtained by NBT in the Order.

It must also be pointed that NBT withheld approximately $24,000 in hire under the subject charter party, and so Pioneer has a claim in arbitration larger than NBT's. It is obvious that this Rule B attachment was brought by NBT to harass Pioneer and to raise the costs of the proceedings in the hope that Pioneer would abandon its claim. This is also made evident by the refusal of NBT to comply with the small claims procedure rules by trying to appoint its own arbitrator, and refusing to agree on a sole arbitrator, thereby necessitating Pioneer to seek the appointment of sole arbitrator by the London Maritime Arbitrator Association (as provided under the small claim rules). NBT also refused to voluntarily reduce the amount of the attachment thereby requiring the present motion. Pioneer submits that this is a blatant abuse of the Rule B remedy requiring vacatur.

Alternatively, the Order should be reduced to the principal claimed amount of $2,379.38, and costs and fees of no more than $9,772.00

## STATEMENT OF FACTS

Pioneer, as disponent owner, time chartered the vessel M/V BOONTRIKA NAREE (the "Vessel") to NBT by charter party dated February 20, 2007 (the "Charter Party"). The Vessel was delivered to NBT on February 26, 2007 and redelivered to Pioneer on March 27, 2007. Upon redelivery Pioneer issued a Final Hire Statement showing a balance due of $23,921.92 (Sammarco Dec., Exh 1).

NBT, however, alleged that the Vessel under-performed during the period of the Charter Party and refused to pay the balance of hire due to Pioneer. As a result of this alleged under performance, NBT claimed in its final hire statement a balance due to it of $3,410.27 (Sammarco Dec., Exh 2). In its Complaint in this action, however, NBT is claiming only $2,379.38 as the alleged balance due (Rau Dec., Exh.1, ¶¶9,11).

Pioneer disputes NBT's interpretation of the Charter Party and has presented its claim to NBT for the balance of the hire withheld. This claim for wrongfully withheld hire in the amount of $23,921.92 and NBT's claim for hire due of $2,379.38, which total some $26,000, are subject to arbitration in London under the small claims procedure agreed to by the parties in the Charter Party.

Under Clause 57 of the Charter Party any disputes between the parties are to be referred for resolution to London

arbitration.[1] The contents of Clause 57 are clear that, in the event there is a dispute between the parties not exceeding US$100,000, then the London Maritime Arbitrators Association ("LMAA") Small Claims Procedure is to apply to that dispute [Sammarco Dec.¶60]. Clause 57 provides in relevant part:

> In cases where neither the claim nor any counter-claim exceeds the sum of US$100,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims procedure current at the time.

The current version of the LMAA Small Claims Procedure ("SCP") is as amended in 2006 (Rau Dec., Exh.3).

The SCP provides that the parties are to agree upon a sole arbitrator, failing which the parties are at liberty to request that the President of the LMAA appoint a sole arbitrator on the parties' behalf. The principal feature of the SCP is that the costs of the sole arbitrator are fixed; the maximum amount of costs recoverable by a successful party in the arbitration is limited; and there is no right to appeal.

Although NBT recognized that these limited monetary disputes must be determined under the SCP, it nevertheless sought to vary the agreed terms by appointing William Robertson as its

---

[1] It should be noted the Charter Party is on back to back terms with the head charter between the Vessel owners and Pioneer dated October 18, 2006 and the provisions of Clause 57 of the head charter are duly incorporated therein (Sammarco Dec.,¶6)(See Complaint, Exh.1 thereto).

4

arbitrator and by requesting that Pioneer appoint an arbitrator in order to form an arbitral Tribunal. As disputes subject to the SCP must be heard by a sole arbitrator, rather than a Tribunal, Pioneer contested the validity of the appointment of Mr. Robertson and requested that he step down. At the same time Pioneer proposed three arbitrators for agreement as sole arbitrator in accordance with the terms of the SCP and asked NBT to agree to one of these names within 14 days, that is, by July 4, 2008 (Sammarco Dec., Exh. 4).

Although Mr. Robertson has stood down as NBT's arbitrator, no agreement was reached as to a sole arbitrator. Pioneer has now been forced to seek the assistance of the President of the LMAA to appoint a sole arbitrator on the parties' behalf in accordance with the provisions of paragraph 2(b) of the SCP. (Sammarco Dec., ¶8).

The most important feature of the SCP for purposes of this motion is that costs are fixed at £2000 plus £150 in respect of the costs of the arbitrator and administration fee with opponents' costs fixed at a maximum of £2,750. Therefore, a parties' total exposure to costs in respect of the above claims will not exceed £4,900.

Specifically, under paragraph 2(a) of the SCP there is a small claim fee payable to the appointed arbitrator which is fixed by the Committee of the LMAA which is currently set at an

amount of £2,000. (Rau Dec., Exh. 4, LMAA Fee Schedule effective as of July 1, 2008). In the event that the President of the LMAA is requested to appoint an arbitrator on the parties' behalf then there is an administration fee payable to the LMAA in this respect of £150 in accordance with paragraph 2(b) of the SCP. In total therefore the costs of the arbitrator (which includes the preparation and issue of an award) are fixed at no more than £2150.

In addition the SCP provides that a successful party in the arbitration is entitled to their legal costs of the arbitration. These are to be assessed by the arbitrator on a commercial basis having regard to the nature of the reference (see paragraph 8 of the SCP). The amount that may be awarded by an arbitrator is assessed in the arbitrator's absolute discretion but up to a maximum figure which has been currently set by the LMAA in the amount of £2,750. This figure is inclusive of disbursements.

Thus, a successful party in a SCP arbitration will not be able to recover any more than £4,900, or approximately $9772.00 (Rau Dec., Exh.5), based on £2,150 in respect of the arbitrator's costs and a maximum of £2,750 by way of recoverable legal costs (Sammarco Dec., ¶14).

Consequently, the most that NBT could be awarded for arbitration costs and fees in this arbitration is some $10,000.00

if it were successful on its approximately $2,400 claim and the arbitrator choose to award it multiples of its principal claim, which is unlikely.

## ARGUMENT

### POINT I

**THE ATTACHMENT SHOULD BE VACATED AS IT WAS IMPROPERLY OBTAINED AND IS AN ABUSE OF THE MARITIME PROCESS**

Rule E(4)(f) entitles any person claiming an interest in property restrained pursuant to Process of Maritime Attachment and Garnishment "to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Supplemental Rule E(4)(f).

The Second Circuit has held in <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434, 445 (2d Cir. 2006):

> [A] district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. <u>We also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us,</u> we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.  n 5 (Emphasis added)

> n.5  Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

Former Rule 12, to which the Second Circuit referred in footnote 5 quoted above, provides:

> Where property is arrested or attached, any person claiming an interest in the property arrested or attached may, upon showing of any improper practice or a manifest want of equity on the part of the plaintiff, be entitled to an order requiring that plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted, consistent with these rules or the supplemental rules.

District Courts have the "inherent authority to vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of plaintiff." Chiquita Int'l, Ltd. v. MV Bosse, 518 F. Supp.2d 589, 598 (S.D.N.Y. 2007); Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal, 411 F. Supp.2d 386, 391 (S.D.N.Y. 2006) (same) (citing Blake Maritime v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310, at *2 S.D.N.Y. Oct. 31, 2005); see also Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965)("The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge.").

Pioneer does not contend that the requirements of Rule

B have not been met.  Rather, Pioneer seeks to vacate the attachment on equitable grounds as the attachment herein constitutes an abuse of process and improper practice.

As stated above, NBT failed to disclose to the Court in its Complaint in support of the attachment the amount of Pioneer's "counterclaim" as it would show that both claims <u>combined</u> were only some $26,000 and each was within the SCP provisions of the arbitration clause of the Charter Party. Instead, NBT stated in the Complaint only that "Defendant has presented a claim against Plaintiff and has alleged that the deduction from hire was illegal." (Rau Dec., Exh 1, ¶7).  The amount of hire deducted was obviously known to NBT to be in the amount of $23,921.92 as per the final hire statement presented by Pioneer to it and as claimed by Pioneer.

Morever, as stated at the outset, NBT's utter failure to point out to the Court in its Complaint that the Charter Party contained a provision governing claims under $100,000 and limiting allowable costs and fees thereunder to no more than $10,000, is inexcusable.  NBT's assertion in paragraph 10 of its Complaint that "it estimates that it will be awarded fees and costs in the amount of $75,000.00" is misleading and inaccurate. The restraint of over $77,000 of Pioneers' funds based on these unfounded assertions constitutes improper practice, made all the more egregious by NBT's refusal to reduce the amount of the

9

attachment voluntarily when the above was pointed out to its counsel(Rau Dec.,¶2).

The foregoing constitutes an improper manipulation, and outright abuse, of the Rule B maritime remedy and the Court should vacate NBT's attachment.

### POINT II

**ALTERNATIVELY PURSUANT TO SUPPLEMENTAL RULE E(6) THE COURT SHOULD REDUCE THE AMOUNT OF THE ATTACHMENT TO REFLECT THE TRUE COSTS OF ARBITRATION UNDER THE SCP**

Supplemental Rule E(6) provides that "Whenever security is taken the court, may on motion and hearing, for good cause shown, reduce the amount of the security given...."

Under this rule the Court is required to determine whether the amount attached is "excessive or reasonably necessary to secure the plaintiff's claim."  See Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising Comm., 511 F. Supp.2d 399, 405 (S.D.N.Y 2007).  This does not require that the plaintiff prove its damages with "exactitude"; however, "the court must be satisfied that the plaintiff's claims are not frivolous". Dongbu Express Co. v. Navios Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996).

Courts in this District have not hesitated to reduce maritime attachments that are deemed excessive because the damages claimed are unsupported by the underlying contract or evidence.  Sea Transport Contractors, Ltd., supra, (court reduced

10

amount of the attachment where complaint did not accurately allege the amount of damages as evidenced by the underlying contract between the parties); Dongbu Express, supra, (reducing the amount of the attachment finding plaintiff's claim oversecured as it exceeded provable damages); Daeshin Shipping Co. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. 2005) (reducing amount of attachment where plaintiff failed to produce evidence to justify the total amount attached). In Transportes Navieros Y Terrestes v. Fairmount Heavy Transp. N.V., 2007 A.M.C. 1933, 2007 U.S. LEXIS (S.D.N.Y. 2007), this Court reduced the amount an attachment from over $10,000,000 to $15,000 because the plaintiff failed to mitigate its damages and the reduced amount was all that plaintiff was likely to recover.

In the present case, there is no question that the damages claimed by NBT are excessive and not supported by the underlying Charter Party. The most that NBT could be awarded in costs if successful in London arbitration under the SCP is approximately $10,000. This assumes that a sole arbitrator would award it fees and costs many multiples of its claim of under $2,500.

In any case, it is beyond dispute that the greatest sum to which NBT may entitled to restrain in New York is $2,379.38, plus $9,772.00 in costs.

**CONCLUSION**

For all the foregoing reasons, the Court should vacate the attachment and direct the release of the attached funds. In the alternative this Court should reduce the amount of the attachment to a reasonable amount reflecting the likely costs recoverable under the SCP.

Dated: New York, New York
       July 23, 2008

>Respectfully submitted,
>
>CARDILLO & CORBETT,
>Attorneys for Defendant
>PIONEER NAVIGATION LTD.
>
>By: _____
>    James P. Rau (JR 7209)
>
>    29 Broadway, Suite 1710
>    New York, New York 10006
>    212-344-0464